UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THEODORE GUZMAN, | 5:23-CV-05088-RAL |
| Petitioner, | |
| vs. | OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING PETITION WITHOUT PREJUDICE |
| TERESA BITTINGER, WARDEN; THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, | |
| Respondents. | |

Petitioner Theodore Guzman filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Guzman is currently serving a life sentence following convictions for three counts of first-degree rape and one count of sexual contact. State v. Guzman, Pennington County, CRI 18-1107. Guzman appealed, and the Supreme Court of South Dakota affirmed Guzman's convictions. State v. Guzman, 982 N.W.2d 875 (S.D. 2022). He applied for a writ of habeas corpus in state court, which is still pending. Guzman v. Sullivan, Pennington County, 51 CIV 23-239.

After nine months of waiting for state court review of his petition, Guzman sought relief in federal court. In his federal § 2254 petition, Guzman raises twelve grounds for relief. Doc. 2. He contends that grounds 1, 7, 9, 11, and 12 were exhausted in state court when the Supreme Court of South Dakota issued its decision in his direct appeal on November 16, 2022, but that the remaining grounds are unexhausted because they are awaiting decision in his pending state habeas proceeding. Doc. 4 at 1. Guzman filed a Motion for Stay and Abeyance requesting a stay of this habeas proceeding so that he is not time-barred from seeking federal review of the grounds that

have been exhausted in state court. Doc. 4. Alternatively, Guzman requests that this Court excuse the exhaustion requirement and argues that undue delay in his state court habeas proceeding gives rise to circumstances "that render such process ineffective to protect the rights of the applicant." Doc. 13 (quoting 28 U.S.C. § 2254(b)(1)(B)(ii)). After de novo review of the Report and Recommendation of United States Magistrate Judge Daneta Wollmann and Guzman's objections, this Court adopts the Report and Recommendation, denies Guzman's Motion for Stay and Abeyance, Doc. 4, and grants Respondents' Motion to Dismiss, Doc. 11.

## I.    Facts and Procedural Background[1]

A Pennington County jury on retrial of the case returned a verdict finding Guzman guilty of first-degree rape and sexual contact.[2] The convictions arise from incidents in November 2017 involving two of his children, N.G. and L.G., and one of his children's friends, A.C. During that time, Guzman and three of his children resided at his parents' home with his parents, his sister and her children, his brother and brother's partner, and two other adult males. Guzman and his children typically slept in the living room because the other bedrooms in the home were occupied.

On the night of the incident, A.C. and her younger siblings stayed at the Guzman residence for a sleepover. N.G. slept on the couch, while the other children, including A.C., slept on the floor. According to A.C., Guzman laid down on the floor next to A.C. in the living room, made

---

[1] The facts pertaining to Guzman's conviction are derived from the opinion in State v. Guzman, 982 N.W.2d 875 (S.D. 2022). This Court is not making findings of fact in this opinion and order, but simply summarizing facts taken from the state court decision.

[2] Respondents request that the Court, in accordance with Federal Rule of Evidence 201, take judicial notice of Guzman's state court criminal proceeding, Pennington County CRI 18-1107, and state habeas proceeding, Pennington County 51 CIV 23-239. Doc. 11 at 2 n.2. Guzman has not objected to Respondents' request. Docs. 13, 15. Because the previous case dockets are public records that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," this Court takes judicial notice of those records but not necessarily of the facts underlying each case. Fed. R. Evid. 201; see also McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 914 (8th Cir. 2014).

sexual advances toward A.C. during the night, and eventually penetrated A.C. with his penis.  The next morning Guzman drove A.C. and the other children to A.C.'s house.  N.G. followed A.C. to her bedroom and told A.C., "I know what's going on.  He's doing it to me too."  A.C. did not disclose anything and acted as though nothing had happened.  A.C. kept the incident to herself for a few weeks.  She eventually disclosed what had happened during the sleepover to her mother.  A.C.'s mother called the police and took her to the emergency room.  A.C. then underwent medical examinations, testing negative for sexually transmitted infections.  On December 11, 2017, Tifanie Petro, a forensic interviewer from the Children's Home Child Advocacy Center, conducted an interview with A.C. during which A.C. disclosed the details of the incident with Guzman.

Following A.C.'s disclosure, Guzman's children were removed from his care.  Because N.G. previously told A.C. that Guzman had sexually abused her too, Petro also interviewed N.G.  During her initial interview, N.G. did not disclose any sexual abuse.  However, N.G. later told her foster mother that abuse had occurred and that she did not tell the interviewer out of fear her father would "go away for a long time."  On January 5, 2018, Petro interviewed N.G. again, and N.G. disclosed multiple instances of sexual abuse by Guzman.

In July 2018, L.G. told her foster mother and N.G. that Guzman had previously raped her.  Petro interviewed L.G., who disclosed that Guzman had raped her roughly two years prior.  L.G. described a night when Guzman and her family were living at her aunt's house.  While she was sleeping next to Guzman, she awoke to Guzman anally penetrating her.

In August 2018, Guzman was indicted on three counts of first-degree rape, one for each act pertaining to A.C., N.G., and L.G., and one count of sexual contact with N.G.  Guzman's first jury trial occurred in January 2020.  At trial, the state presented testimony from A.C. and her parents, N.G., L.G., Petro and Brandi Tonkel from the Child Advocacy Center, and several law

enforcement and medical professionals.  Guzman waived his Fifth Amendment right against self-incrimination and testified.  He denied the allegations but confirmed that A.C. had spent the night at his parents' home in November 2017.  However, he testified that he left the home that night before the girls had gone to sleep and that he did not return until the next morning when they were awake.  Guzman also called his mother, Helen Guzman, as a defense witness.  Helen testified that A.C. spent the night in August, not November.  She stated that Guzman had brought A.C. to the house but that he later left.  Helen further testified that she stayed awake until 2:30 a.m., that the girls were asleep in the living room when she went to bed, and that "nothing happened."  The case was submitted to the jury, and the jurors were deadlocked on a verdict.  The circuit court then declared a mistrial.

Guzman's second trial began in April 2021.  Before trial, Guzman filed notice of intent to offer the recorded forensic interview of his son, A.G.  In the interview, A.G. disclosed that he had been raped by a male neighbor.  Guzman sought to introduce the evidence to show the propensity of children to fabricate events.  Alternatively, Guzman sought to use the video to impeach Petro on cross-examination to demonstrate "how she elicited false accusations by a member of the same family during the same time period."  The state objected to the use of A.G.'s interview, arguing the interview was irrelevant because A.G. was not a victim in the case and because there was no evidence indicating A.G.'s disclosures were in fact false.  The trial court concluded the video of A.G.'s interview was irrelevant and therefore inadmissible, but the court noted it would consider whether to allow questions regarding A.G.'s interview during cross-examination of Petro "depending upon factually what we have at that point and what the intent is."  Ultimately, Guzman did not ask the court to allow him to refer to A.G.'s allegations while cross-examining Petro.

Before the second trial, Guzman also objected to proffered testimony from Hollie Strand, a witness the State had substituted for Brandi Tonkel, who testified at the first trial about forensic interviewing techniques, the dynamics of child sexual abuse disclosures, and the trauma associated with sexual abuse. Guzman argued Strand's testimony was cumulative to Petro because Strand could not offer relevant expert opinion beyond Petro's testimony. At trial, Strand testified first, and Guzman did not object to either witness's testimony as cumulative.

During the State's case-in-chief, the State notified the trial court and Guzman that it intended to offer Guzman's testimony from the first trial. Guzman objected arguing he took the stand in the first trial to rebut the State's introduction of duplicitous evidence. The trial court overruled the objection and allowed the transcript to be read into the record. Guzman chose not to testify on his own behalf at the second trial. The State also proffered testimony from W.B., a friend of one of Guzman's other daughters, who claimed to have been sexually abused by Guzman multiple times while at sleepovers with Guzman's children. Guzman objected to this testimony, arguing the testimony was propensity evidence and that its prejudicial effect would substantially outweigh any probative value. The State contended the testimony was admissible under Rule 404(b) to show motive, opportunity, intent, absence of mistake or accident, and common plan or scheme. The trial court allowed W.B. to testify after concluding that the testimony tended to prove intent, preparation, plan, and absence of mistake and that it was not unfairly prejudicial.

Before the State rested its case, the State asked that Helen, who was included on Guzman's list of potential witnesses, and her husband Benny be precluded from testifying on behalf of Guzman because they had violated a sequestration order. The trial court entered a sequestration order before Guzman's first trial. The record does not show the parties renewed their motion for witness sequestration before the second trial or that the trial court entered an order, yet the record

5

indicates the parties were operating under the assumption a sequestration order existed. To rule on Helen and Benny's exclusion, the trial court heard testimony from Jamie Fisher, a paralegal in the Pennington County State's Attorney's Office, who stated that he observed Benny in the viewing room during the first week of trial and during L.G.'s testimony. Fisher also testified he only remembered seeing Helen in the viewing room during L.G.'s testimony. Finding they violated the sequestration order, the trial court excluded both Helen's and Benny's testimony.

On April 15, 2021, the jury returned a verdict finding Guzman guilty of all counts, and Guzman was sentenced to life imprisonment on each count of first-degree rape and sentenced to fifteen years on the sexual contact count, all to run consecutively. Guzman appealed raising six grounds, and the Supreme Court of South Dakota affirmed his convictions and sentence on November 16, 2022.

On February 28, 2023, Guzman filed a petition for writ of habeas corpus in state court. Guzman v. Sullivan, Pennington County 51 CIV 23-239. Guzman raised ten claims for relief. Id. The state respondents moved to dismiss on March 28, 2023. After waiting nearly nine months for his petition to be reviewed, Guzman wrote a letter to Judge Craig A. Pfeifle inquiring about the status of his habeas claim and appointment of counsel, which was received on December 1, 2023. Judge Pfeifle responded on December 5, 2023, advising Guzman that "there are many cases in line before [his]," and that while the court is working diligently, "further delay is expected in the review of [his] application." Doc. 13-1. At the time of this opinion and order, the state habeas court has not ruled on Guzman's claims or provided Guzman counsel. Guzman v. Sullivan, Pennington County 51 CIV 23-239.

After receiving Judge Pfeifle's letter, Guzman filed a Petition for Writ of Habeas Corpus with this Court, Doc. 1, raising twelve grounds for relief:

(1) Petitioner's right to obtain witnesses on his behalf and present a meaningful defense, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Helen Guzman was prohibited from testifying . . . .

(2) Petitioner's right to effective counsel, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner's trial attorney . . . failed to request to the trial court that all witnesses be sequestered during the second jury trial of the Petitioner. . . .

(3) Petitioner's right to effective counsel, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner's trial attorney . . . failed to investigate the incident and failed to request that the alleged victims be evaluated and assessed by qualified mental health professionals regarding their psychiatric fitness, competence and mental states. . . .

(4) Petitioner's right to effective counsel, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner's trial attorney . . . was deficient by failing to exploit inconsistencies and thoroughly question the victim's about said inconsistencies during their respective cross examinations in the second jury trial . . . .

(5) Petitioner's right to effective counsel, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner's trial attorney . . . was deficient by failing to move for dismissal of the indictment due to the Petitioner's Sixth Amendment right to a speedy trial being violated.

(6) Petitioner's right to effective counsel, as guaranteed under the Sixth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner's trial attorney . . . was deficient given the cumulative effect of counsel's ineffectiveness resulting from the individual errors and grounds cited in this petition.

(7) Petitioner's right against self-incrimination, as guaranteed under the Fifth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated in that Petitioner was essentially forced to testify against himself in his trial. . . . Subsequent to his assertion of that right, the prosecution read his testimony from the first trial into the record. . . .

(8) Petitioner's right to not be deprived of liberty without due process of law, as guaranteed under the Fourteenth Amendment to the United States Constitution was violated in that the Petitioner is actually innocent of the charges for which he was convicted.

(9) Petitioner's right to call his own witnesses at trial as guaranteed under the Sixth Amendment to the United States Constitution and right not be deprived of liberty without due process of law, as guaranteed under the Fourteenth Amendment to the United States Constitution was violated in that the Petitioner was prohibited by the trial court from introducing evidence that would have given credence and credibility to his defense at trial. Petitioner's minor son, A.G. made sexual allegations, similar in nature to those made by the victims in this case and during the same period, but against a neighbor and not against Petitioner.

7

(10) Petitioner's right to be free from cruel and usual punishment as guaranteed under the Eighth Amendment to the United States Constitution and applied to the states via the Fourteenth Amendment Due Process Clause was violated because the sentence imposed by Judge Mandel, three consecutive life sentences plus an additional fifteen years, was unconstitutionally harsh and excessive in light of the circumstances of the Petitioner's case.

(11) Petitioner's right to constitutional due process as guaranteed under the Fifth and Fourteenth Amendment(s) to the United States Constitution was violated because the trial court admitted others acts evidence under SDCL 19-19-404(b) from witness W.B. W.B. was allowed to testify to six different instances of uncharged sexual abuse and the prejudice that resulted was unfair. The admission of six prior incidents was excessive to the point the testimony became more prejudicial than probative. The trial court's failure to limit or exclude it under SDCL 19-19-403 violated Petitioner's constitutional due process rights and deprived him of a fair trial.

(12) Petitioner's right to due process as guaranteed under the Fifth and Fourteenth Amendment(s) to the United States Constitution was violated because of the admission of expert testimony by former forensic interviewer Holli [sic] Strand. Strand's testimony was cumulative to that of Tiffanie Petro, another forensic interviewer, and was more prejudicial than probative.

Doc. 2. Of those twelve grounds, Guzman raised grounds 1, 7, 9, 11, and 12 on his direct appeal. He raised grounds 1 through 10 in his state habeas petition.

Shortly after filing his § 2254 petition, Guzman requested that this Court stay his federal habeas proceeding and hold it in abeyance to ensure that he is not time-barred from seeking federal review of the grounds that Guzman exhausted in his direct appeal. Doc. 4. This Court ordered Respondents to file a response to Guzman's Motion for Stay and Abeyance. Doc. 10. Respondents argue that Guzman has not exhausted his claims in state court and move to dismiss Guzman's petition without prejudice under Federal Rule of Civil Procedure 12(b)(6). Doc. 11.

Guzman's Motion for Stay and Abeyance, Doc. 4, and Respondents' Motion to Dismiss, Doc. 11, were referred to United States Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B) and the District of South Dakota's Civil Local Rule of Practice 72.1.A.2(b). On July 29, 2024, Magistrate Judge Wollmann submitted a report and recommended that Guzman's Motion for Stay and Abeyance, Doc. 4, be denied, and that Respondents' Motion to Dismiss, Doc.

11, be granted because Guzman has not exhausted his claims in state court. Guzman timely objected to the report and recommendation. Doc. 15. Because Guzman's federal petition includes unexhausted claims and his one-year statute of limitations is tolled leaving him at no risk presently of having his federal claims time barred, this Court adopts the Report and Recommendation, denies Guzman's Motion for Stay and Abeyance, Doc. 4, and grants Respondents' Motion to Dismiss, Doc. 11.

## II.    Discussion

### A.  Standard of Review

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court "judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B.  AEDPA's Exhaustion Requirement

Section 2254 of Title 28 allows a state inmate to attack collaterally in federal court his conviction and sentence as contrary to the United States Constitution after exhausting Constitution-based claims through available state courts. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). "The exhaustion requirement protects the state courts' role in enforcing federal law, allows state courts the opportunity first to correct possible constitutional defects in state court convictions, and prevents the potentially 'unseemly' disruption of state judicial proceedings through premature federal court

intervention." Blakney v. Young, 322 F. Supp. 3d 935, 939 (D.S.D. 2018) (citing Rose v. Lundy, 455 U.S. 509, 518 (1982)). Under the framework established in Lundy, a federal district court may not issue a writ of habeas corpus in response to a "mixed" petition that contains both exhausted and unexhausted claims.

For a claim to be exhausted, the petitioner must fairly present the issue to the state courts in a federal constitutional context. Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993). Fair presentation requires more than simply going through state courts. "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988)).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on a state prisoner's habeas claims submitted in federal court. 28 U.S.C. § 2244(d)(1). In Rhines v. Weber, the Supreme Court addressed a problematic implication of AEDPA: "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." 544 U.S. 269, 275 (2005). To avoid losing opportunity for federal review, the Supreme Court recognized an exception to the Lundy rule which allows federal district courts to stay a mixed petition "and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Id. Such a stay and abeyance "should be available only in limited circumstances." Id. at 277. For instance, the petitioner in Rhines raised 35 claims in his federal petition, and the State

challenged 12 of those claims as unexhausted. Id. at 272. The district court ruled Rhines had exhausted 27 of the claims he made through direct appeal to the state supreme court and through his appeal of a state habeas corpus case through the state supreme court. Id. Rhines had timely filed his federal petition with 11 months remaining on his AEDPA limitations period but had waited 18 months for the district court to rule on what claims were exhausted. Id. The AEDPA period is tolled only during the pendency of state proceedings and not federal ones. Duncan v. Walker, 533 U.S. 167, 181-89 (2001). Thus if the district court had dismissed Rhines's petition rather than stay it, his one year AEDPA period would have run. Rhines, 544 U.S. at 275 ("[I]f the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court.").

To address Guzman's Motion for Stay and Abeyance, Doc. 4, this Court must initially determine whether Guzman's claims are exhausted. If there are both exhausted and unexhausted claims in the petition, Guzman's petition is mixed and cannot proceed in federal court. "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding." Satter, 977 F.2d at 1262.

Guzman's federal petition includes both exhausted and unexhausted claims. Guzman raises twelve grounds for relief, all of which he either raised on direct appeal or has raised in his pending state habeas petition. Grounds 1, 7, 9, 11, and 12 were raised on direct appeal, and grounds 1 through 10 are raised in his state habeas proceeding. Assuming Guzman fairly presented the issues on his direct appeal to the Supreme Court of South Dakota in a federal constitutional context, Guzman would have exhausted some claims, presumably grounds 1, 7, 9, 11, and 12, but would

11

not have yet exhausted grounds 2, 3, 4, 5, 6, and 8, which are new to his pending state habeas petition. In short, Guzman filed a "mixed petition" of exhausted and unexhausted claims.

### C. AEDPA's Statute of Limitations and Tolling Provisions

AEDPA imposes a one-year statute of limitations to petitions filed under 28 U.S.C. § 2254. See 28 U.S.C. § 2244(d)(1). As relevant to Guzman's case, the one-year period runs from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This one-year limitation is tolled while an application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

Guzman's judgment became final on February 14, 2023, ninety days after the state supreme court's opinion was filed. See Clay v. United States, 537 U.S. 522, 527, (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Thus, Guzman timely filed his application for habeas relief in state court on February 28, 2023. Only about 14 days ran on his one-year AEDPA period during that interlude. The Defendants do not contest the timeliness of Guzman's petition nor whether the petition was properly filed. Doc. 11 at 4. Instead, Defendants argue that this Court should dismiss Guzman's petition because he has not exhausted all of his claims and because his claims are tolled, obviating the need for a stay and abeyance. Id. at 3.

Guzman concedes that, "without a doubt, the claims or grounds that are specifically listed in his state habeas petition are tolled in accordance with . . . AEDPA." Doc. 14 at 1. However,

Guzman believes "if this matter were dismissed without prejudice, that the AEDPA time clock would again begin ticking, but ticking only for the specific claims or grounds that are currently deemed exhausted by Petitioner's direct appeal and not specifically included on his state habeas petition." Thus, Guzman argues grounds 11 and 12 in his federal petition should be stayed because they are not raised in his state petition and, he fears, might not be tolled through the filing of his state habeas petition.

At issue is the interplay between the statute of limitations and tolling provisions of 28 U.S.C. § 2244(d)(1) and (2). The Eighth Circuit has held that "the statute of limitations in 28 U.S.C. § 2244(d)(1) applies to each claim within an application" rather than to an application as a whole. DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014). In other words, the period of limitations is applied on a claim-by-claim basis, meaning a petitioner cannot "resurrect previously barred claims" by filing a new timely claim. Zack v. Tucker, 704 F.3d 917, 924 (11th Cir. 2013).

Guzman emphasizes AEDPA's tolling provision similarly can be read as a claim-by-claim provision because it tolls the limitation period for the time during which State post-conviction review "with respect to the pertinent judgment or claim is pending." Doc. 14 at 2 (citing 28 U.S.C. § 2244(d)(2) (emphasis in original)). If § 2244(d)(2) were to apply on a claim-by-claim basis, grounds 11 and 12 in his federal petition would not be tolled, and a rational argument for stay and abeyance might exist. However, unlike § 2244(d)(1), § 2244(d)(2) does not apply on a claim-by-claim basis. See Bishop v. Dormire, 526 F.3d 382, 384 (8th Cir. 2008) (holding "the pending state post-conviction or other collateral review need not raise a federally cognizable claim" to toll the limitation period under 28 U.S.C. § 2244(d)(2)); Sweger v. Chesney, 294 F.3d 506, 519–20 (3d Cir. 2002) (rejecting the "confusing and impractical claim-by-claim approach"). Instead,

13

AEDPA's statute of limitations is tolled during the pendency of a state application concerning the pertinent judgment, even if the state application does not include any of the claims later asserted in the petitioner's federal petition. Bishop, 526 F.3d at 382–84.

Thus, AEDPA's tolling provision is application-based rather than claim-based, and the one-year period for Guzman to file his federal petition is tolled both for claims exhausted on direct appeal and those made in his state habeas case. The statute of limitations for claims raised in his federal petition will not run during the pendency of his state proceeding. See also Sweger, 294 F.3d at 520 ("[U]nder § 2244(d)(2), a properly filed state post-conviction proceeding challenging the judgment tolls the AEDPA statute of limitations during the pendency of the state proceeding. Whether the federal habeas petition contains one or more of the claims raised in the state proceeding does not matter as long as the state proceeding and the federal habeas petition attack the same judgment."). By filing an application for state post-conviction review, Guzman's AEDPA limitation period is entirely tolled, including for grounds 11 and 12 which he previously exhausted and chose not to raise once again in his state habeas petition. Guzman has only had 14 total days run on his AEDPA statute of limitations, has 351 days left to file another federal habeas petition once he exhausts his state claims, and thus has no need for this Court to order a stay and abeyance. Guzman's situation is not what the Supreme Court had in mind as one of the "limited circumstances" for stay-and-abeyance when it recognized that option. Rhines, 533 U.S. at 277.

### D. Exceptions to AEDPA's Exhaustion Requirement

Guzman opposes Respondents' Motion to Dismiss, Doc. 11, and seeks a grant of his application for a writ of habeas corpus, arguing the exhaustion requirement should be excused. Doc. 15 at 2. Section 2254(b)(1) only permits federal courts to entertain an application for a writ of habeas corpus if

14

(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or (ii) circumstances
exist that render such process ineffective to protect the rights of the applicant.

Guzman contends the delay in his state proceeding renders the state's process ineffective to protect
his rights. Doc. 15 at 2.

"[A]n inordinate and unjustifiable delay" may render the state's process ineffective,
allowing a federal court to excuse the exhaustion requirement. Welch v. Lund, 616 F.3d 756 (8th
Cir. 2010) (citing Jackson v. Duckworth, 112 F.3d 878, 881 (7th Cir. 1997)). When determining
whether delay constitutes ineffective process, courts consider the length of the delay, the fault of
the parties, and whether the delay might moot the petitioner's claims. See Harris v. Champion, 15
F.3d 1538, 1560 (10th Cir. 1994) (holding delay in adjudicating a direct criminal appeal beyond
two years creates a presumption that the state appellate process is ineffective); Chitwood v. Dowd,
889 F.2d 781, 785 (8th Cir. 1989) (excusing exhaustion where there was at least negligent
disregard of prisoner rights and the potential for mooting the prisoner's claims). Courts may also
consider "whether there has been any activity or progress in the state court action." O'Neal v.
Kenny, 49 F. App'x 84, 85 (8th Cir. 2002) (unpublished) (per curiam). While no precise time
establishes an inordinate delay, the Eighth Circuit has found "the passage of more than two years
time in which the state petition was pending without judicial action" may amount to ineffective
process. Wade v. Lockhart, 674 F.2d 721, 722 (8th Cir. 1982).

In this case, Guzman filed his state habeas petition on February 28, 2023. Pennington
County 51 CIV 23-239. At the time of this opinion and order, there has been no judicial action in
his state habeas case. On December 1, 2023, Guzman's letter to Judge Pfeifle was filed. In it,
Guzman inquired about the delay and the appointment of counsel in accordance with South Dakota
state law. See SDCL § 21-27-4. In his response letter filed on December 7, 2023, Judge Pfeifle

stated "there are many cases in line before [Guzman's]" and that "further delay is expected in the review of [Guzman's] application." Doc. 13-1. There have been no subsequent filings in Guzman's state habeas case.

It has now been nearly 19 months since Guzman filed his state petition and nearly 10 months since his correspondence with Judge Pfeifle regarding the petition's status. This delay is not attributable to Guzman, who has made a good faith effort to ensure his claims are in the proper forum. Respondents point to the letters as evidence that "the [state] habeas court here is not ignoring Guzman" but rather "acknowledged Guzman's concerns." Doc. 11 at 8 n.4. While this Court does not view the state's process as intentionally dilatory, the state's awareness of its own delay does not render the state's process effective. Further, this Court is concerned there has not been any judicial action since the application was filed. See Breazeale v. Bradley, 582 F.2d 5, 6 (5th Cir. 1978) (holding a state remedy ineffective where "the state habeas petition has been completely dormant for over one year" and where the state offered no reason for the delay).

According to Judge Pfeifle's letter, the state court "is working diligently to address all pending matters," including Guzman's petition. Doc. 13-1. Time will tell. The doctrine of comity counsels against disrupting state judicial proceedings through premature federal intervention. The Eighth Circuit in one instance where a state habeas case has been pending longer than two years remanded the case to a district court to consider a habeas petition on the merits if a state court had not rendered a decision within a stated period of time. O'Neal, 49 F. App'x at 85 (listing examples of such cases); see Wade, 674 F.2d at 722 (directing the district court to consider a habeas petitioner's claims on the merits if the state court did not rule on the petitioner's state petition within 60 days where the state court had already delayed ruling on the petition for over two years). Two years have yet to elapse since Guzman filed his state habeas case. If after two years Guzman's

application has not progressed in state court, Guzman may refile a federal petition under 28 U.S.C. § 2254 for this Court to consider whether the state's corrective processes have been ineffective to protect Guzman's rights.

**III.    Conclusion**

For the reasons stated above, it is hereby

ORDERED that the Magistrate Judge's Report and Recommendation, Doc. 14, is adopted, and Guzman's Objection, Doc. 15, is overruled. It is further

ORDERED that Guzman's Motion for Stay and Abeyance, Doc. 4, is denied. It is further

ORDERED that Respondents' motion to dismiss without prejudice, Doc. 11, is granted.


DATED September 30ᵗʰ, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

17